## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into between ALBS Cartage Corp. ("ALBS Cartage") and Daniel Clarke ("Mr. Clarke").

WHEREAS, Mr. Clarke was formerly employed by ALBS Cartage; and

WHEREAS, Mr. Clarke filed a civil action against ALBS Cartage in the United States District Court, Eastern District of New York, Case No. 13-CV-134 (BMC) (the "Civil Action"); and

WHEREAS, Mr. Clarke was represented by counsel, Abdul K. Hassan, Esq., Attorney and Counselor at Law, in this matter; and

WHEREAS, Mr. Clarke and ALBS Cartage (collectively, the "Parties") have agreed to resolve all matters, disputes, and claims between them pursuant to the terms contained in this Agreement; and

WHEREAS, as a condition precedent to each party performing its obligations as provided for herein, the other party has agreed that it will execute this Agreement and fully comply with its terms; and

NOW THEREFORE, in exchange for the good and valuable consideration received under this Agreement, the sufficiency of which Mr. Clarke acknowledges, the Parties agree as follows:

1. The parties agree that, by entering into this Agreement, ALBS Cartage does not admit, and specifically denies, any liability or wrongdoing, or violation of any law, statute, regulation, or policy. ALBS Cartage asserts that it is entering into this Agreement solely for the purpose of amicably resolving all matters in controversy, disputes, causes of action, claims, contentions, and differences of any kind whatsoever between Mr. Clarke and ALBS Cartage. The parties further agree that there is a bona fide dispute as to the application of the motor carrier exemption, among other defenses, and the parties believe that, in the circumstances of this case, the settlement is fair, reasonable, and adequate.

2. Mr. Clarke acknowledges that, other than the Civil Action, he has not filed any actions, complaints, charges, grievances, arbitrations, or claims against ALBS Cartage or its divisions, affiliates, subsidiaries, parents, predecessors, successors, assigns, officers, directors, owners, trustees, employees, agents, stockholders, administrators, representatives, attorneys, insurers, or fiduciaries in their individual and/or representative capacities (collectively, the "ALBS Cartage Group"), in any judicial, administrative, or arbitral forum.

3. Mr. Clarke acknowledges that he has been given a period of at least twenty-one days within which to consider this Agreement, has been advised to, and did, consult with an attorney before executing this Agreement, and that it is fully his decision whether he chooses to sign this Agreement before the 21-day period ends. Mr. Clarke agrees that the modifications that have been made during the negotiations of this Agreement do not restart the 21-day period. Mr.

Clarke has been advised that he has seven days following his execution of this Agreement within which to revoke his assent (the "Revocation Period"). To be accepted, the revocation must be in writing, must be delivered to John P. Keil, Esq., Collazo Florentino & Keil LLP, 747 Third Avenue, 25th Floor, New York, New York 10017, and, if mailed or delivered by overnight carrier, must be postmarked within seven calendar days of execution of this Agreement.

4. Mr. Clarke acknowledges and agrees that each party is obliged to perform its obligations as provided for herein only upon expiration of the Revocation Period without his right to revoke the Agreement having been exercised.

5. Mr. Clarke agrees to withdraw, with prejudice, the pending Civil Action, and to take all measures necessary to effectuate such withdrawal. The Court's approval of this Agreement and dismissal of the action with prejudice are conditions precedent to ALBS Cartage making any payments or otherwise performing its obligations to, or on behalf of, Mr. Clarke as provided for in this Agreement.

6. In full and complete settlement and in final satisfaction of any and all claims which Mr. Clarke had, has, or may have against the ALBS Cartage Group with respect to Mr. Clarke's employment with ALBS Cartage, or otherwise, ALBS Cartage agrees to make the following payments: 1) a payment by check of Ten Thousand, Two Hundred Dollars ($10,200) payable to Mr. Daniel Clarke; and 2) a payment by check of Nine Thousand Eight-Hundred Dollars ($9,800) payable to Mr. Abdul K. Hassan, Esq. – Mr. Clarke's attorney, which represents full payment of legal fees, costs, and disbursements.

Following the expiration of the Revocation Period without Mr. Clarke having exercised his right to revoke this Agreement, ALBS Cartage shall petition the Court for approval of this Settlement Agreement. Mr. Clarke agrees not to oppose the petition. If, and only if, the Court approves the Agreement and dismisses the action with prejudice, the Company shall deliver the two settlement checks specified above in settlement of Mr. Clarke's claims to Abdul K. Hassan, Esq. Attorney and Counselor at Law, 215-28 Hillside Avenue, Queens Village, NY 11427, within 14 business days of the date of the Court's order. The appropriate tax documents concerning this payment shall issue at the proper time. If ALBS Cartage does not make the above payments to Mr. Clarke or Mr. Hassan within 14 days of the court's approval of the settlement, Mr. Clarke and Mr. Hassan will be entitled to legal fees, costs, and disbursements from the Company concerning any effort or action to recover the unpaid settlement monies.

Mr. Clarke acknowledges that the ALBS Cartage Group has made no representations concerning whether any amounts paid pursuant to this Agreement are subject to taxation. Mr. Clarke, and not the ALBS Cartage Group, will assume any and all responsibilities for taxes which may be imposed by any taxing authority in connection with the amounts he receives pursuant to this Agreement or any other agreement. Mr. Clarke agrees to indemnify the ALBS Cartage Group and will hold harmless the ALBS Cartage Group for any taxes and penalties that may result from the tax treatment of payments pursuant to this Agreement.

7. In consideration of the payments to be provided to Mr. Clarke and other good and valuable consideration, the sufficiency of which is hereby acknowledged, Mr. Clarke, both

individually and in his capacity as Chief Executive Officer and agent of DC & Son Trucking Inc. ("DC & Son"), for himself, his heirs, executors, administrators, beneficiaries, successors, assigns, and on behalf of DC & Son (collectively, "Releasor"), hereby releases and forever discharges ALBS Cartage and the ALBS Cartage Group (collectively the "Released Parties") from all claims, causes of action, demands, obligations, losses, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities of any nature whatsoever, whether based in contract, tort, statute, or other legal or equitable theory of recovery, known or unknown, suspected or unsuspected, which as of this Agreement Releasor had, now has, or claims to have against the Released Parties. Mr. Clarke specifically releases, without limitation, any claim arising under the Age Discrimination in Employment Act of 1967, the New York Labor Law, the New York City Human Rights Law, the New York State Executive Law, the Americans With Disabilities Act, Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act of 1993, the National Labor Relations Act, the Occupational Safety and Health Act of 1970, the Equal Pay Act, the Fair Labor Standards Act, the New York Minimum Wage Act and the Regulations thereunder, the Employee Retirement Income Security Act of 1974, and any and all other federal, state, or local laws, regulations, or rulings. The foregoing release does not include any claim by Mr. Clarke solely to enforce the terms, conditions, and provisions of this Agreement or any claims arising after Mr. Clarke executes this Agreement.

Mr. Clarke further releases and waives any right to become, and promises not to consent to become, a member of any class in a case in which claims are asserted against the Released Parties that are in any way related to his employment or separation from employment with the Company. If, without his prior knowledge and consent, Mr. Clarke is made a member of a class in any proceeding, he will opt out of the class at the first opportunity. Mr. Clarke further releases and waives to the extent permitted by law his right to any monetary recovery should any agency or third party pursue any claims on his behalf.

ALBS Cartage hereby releases Mr. Clarke and DC & Son from all claims it has, had, or may have, known or unknown, prior to the signing of this Agreement, except as provided herein or as necessary to enforce the terms of this Agreement.

8.     Mr. Clarke expressly understands and agrees that Released Parties' obligations under this Agreement are in lieu of any and all other pay or benefits which, as of this Agreement, Mr. Clarke or DC & Son had, now has, or claims to be entitled to receive from any of the Released Parties, including, without limitation, any right or claim that he may have to employment or reinstatement with the ALBS Cartage Group, or to any back pay, front pay, interest, bonuses, damages, accrued vacation, accrued personal time, accrued sick leave, medical, dental, optical, or hospitalization benefits, accidental death and dismemberment coverage, issuance of securities, pensions, education benefits, life insurance benefits, overtime, severance pay, liquidated damages, and/or attorney's fees. No fact, evidence, event, or transaction currently unknown to Mr. Clarke but which hereafter may become known to him shall affect in any way or manner the final and unconditional nature of this Agreement.

Mr. Clarke expressly agrees to protect, indemnify, defend, and hold harmless the ALBS Cartage Group from and against any and all costs or expenses (including but not limited to reasonable attorneys' fees and damages) which they may incur as a result of the assertion of any

claim by any attorney or representative of Mr. Clarke against the ALBS Cartage Group for attorneys' fees, costs, or disbursements for services rendered to or on behalf of Mr. Clarke, except as may specifically be provided for in this Agreement.

9. Mr. Clarke acknowledges that he has read this Agreement and he fully understands its terms and effect, and signs the Agreement knowingly and voluntarily, without duress or coercion, and with the intent of being legally bound by it. Mr. Clarke acknowledges that he is waiving legal rights by signing this Agreement and that he was advised to and has consulted with an attorney before signing the Agreement. Mr. Clarke affirms that no statements, representations, or promises have been made to influence him to sign this Agreement other than those represented herein.

10. Nothing in this Agreement shall preclude Mr. Clarke, ALBS Cartage Corp., or any member of the ALBS Cartage Group from cooperating with or making truthful disclosures in response to a court order or inquiry by government or regulatory authorities, to enforce or carry out the terms of this Agreement, or as otherwise may be required by law, statute, or regulation. However, by signing this Agreement, Mr. Clarke agrees that he is not entitled to any compensation from the ALBS Cartage Group in any form, directly or indirectly, in connection with any claim or cause of action relating to such cooperation or disclosure.

11. This Agreement is expressly conditioned on the United States District Court, Eastern District of New York, approving this settlement and dismissing Mr. Clarke's Amended Complaint against ALBS Cartage Corp. with prejudice. The parties to this Agreement agree that if approval of the settlement and dismissal with prejudice is not so entered within a reasonable time and after appropriate efforts, or if the Court conditions dismissal upon any other act not contemplated in the Agreement, the parties will have the option to rescind this Agreement in its entirety. In the event either party exercises that right, the parties to this Agreement shall stand in the same position as if the Agreement had never been prepared or executed, nothing contained in this Agreement shall be used as an admission against either party, and no party to this Agreement shall be deemed to have waived or relinquished any of its rights, privileges, claims, or defenses by having entered into this Agreement.

12. Mr. Clarke will not hereafter apply for or otherwise seek or accept employment, re-employment, reinstatement with, or other contractual relationship to perform work for the ALBS Cartage Group or any entity that is, or hereafter becomes, related to the ALBS Cartage Group, whether as a parent institution, subsidiary, joint venture, or affiliated institution, in any capacity, whether as an employee, consultant, or independent contractor. If Mr. Clarke becomes employed, reemployed, or provides any services in contravention of this provision, such employment or engagement may be immediately terminated and such action shall not form the basis of any legal claim or litigation.

13. The provisions of this Agreement are severable, and if any part of it is found to be unenforceable, the other provisions shall remain fully valid and enforceable.

14. Each of the Parties has had the opportunity to participate in the drafting and preparation of the final language of this Agreement and has been advised, or had the opportunity

to be advised, by their attorneys, regarding the terms, effects, and consequences of this Agreement. Accordingly, in the construction to be made of this Agreement, this Agreement shall not be construed as having been drafted solely by or on behalf of one or more of each of the Parties. The Agreement shall be construed mutually and not applied in favor of or against any particular party.

15. This Agreement and the terms contained herein are contractual in nature and not mere recitals. The terms of this Agreement shall inure to the benefit of the Parties and their respective successors, assigns, administrators, and trustees.

16. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without reference to choice of law principles therein.

17. The failure to enforce any section or subsection hereof shall not constitute a waiver of such section or subsection.

18. This Agreement shall not constitute a precedent with respect to any other party's dealings with ALBS Cartage.

[Continued on the following page]

19. The terms of the Agreement represent the entire agreement between Mr. Clarke and ALBS Cartage with respect to Mr. Clarke's claims against ALBS Cartage, and this Agreement supersedes all prior agreements or understandings, written or oral, between them on such matters. Nothing may be changed or modified except by a written instrument signed by Mr. Clarke and ALBS Cartage. It is understood, however, that this Agreement may be executed in counterparts, each of which shall be deemed an original, but when taken together shall constitute one and the same Agreement. Emailed or faxed signatures shall be considered the equivalent of an original signature.

ALBS CARTAGE CORP.

By: _____

Arthur Lih
President, ALBS Cartage Corp.

Dated: _____

DANIEL CLARKE

_____

Dated: 5/10/13

STATE OF NEW YORK )
                  : ss.:
COUNTY OF QUEENS  )

On the 10 day of May, 2013 before me personally came Daniel Clarke, to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

_____
Notary Public

CHARLES BELGRAVE
Notary Public, State of New York
No. 01BL5076962
Qualified in Nassau County
Commission Expires April 28, 20_14_

6